UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
KAREEN FORRESTER,

                Plaintiff,

  -against-

                            **COMPLAINT**

                            No. 23-2449

MAIMONIDES MEDICAL CENTER and NEW YORK STATE
NURSES ASSOCIATION,

                            **<u>Jury Trial Demanded</u>**

                Defendants.

-------------------------------------------------------------------------X

Plaintiff, KAREEN FORRESTER, by and through her attorneys, FAMIGHETTI & WEINICK, PLLC, alleges upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

<u>**JURISDICTION AND VENUE**</u>

1.    This is a civil action based on Defendants' violations of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 185, 301 and breach of contract.

2.    Specifically, Plaintiff brings this hybrid Section 301/breach of duty of fair representation, alleging that Defendant, Maimonides Medical Center, breached the collective bargaining agreement governing Plaintiff's employment, and that Defendant, New York State Nurses Association, breached its duty of fair representation to Plaintiff.

3.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343.

<u>**PARTIES**</u>

4.    Kareen Forrester is a resident of the County of Kings, State of New York.

5.      At all relevant times, Forrester was an employee of Maimonides Medical Center and a dues paying member of the New York State Nurses Association.

6.      Maimonides Medical Center ("Maimonides") is a not-for-profit corporation organized pursuant to the laws of the State of New York.

7.      Maimonides operates its principal place of business in Kings County, State of New York.

8.      New York State Nurses Association ("NYSNA") is a labor union representing roughly 42,000 nurses working in healthcare facilities in New York State.

9.      NYSNA operates its principal place of business in New York County, State of New York.

## FACTS

10.     Maimonides is a hospital in Brooklyn.

11.     Maimonides employs hundreds of nurses across multiple patient care units.

12.     The nurses employed at Maimonides organized a collective bargaining unit, i.e. a union, NYSNA.

13.     On behalf of Maimonides's nurses, NYSNA negotiated a Collective Bargaining Agreement (the "CBA"), which sets the terms and conditions of employment for Maimonides's nurses.

14.     Among the provisions of the CBA, it requires that when Maimonides elects to demote, suspend, or "otherwise discipline[]" an employee, it must do so only based on just cause and it must "promptly" notify NYSNA "in writing" of each such action.

15.     Moreover, disciplinary notices must be completed by Maimonides's supervisors "as soon as possible after the incident," they must have the subject employee sign the form, and a copy of the form must be distributed to NYSNA and the employee.

16.     On April 3, 2017, Maimonides hired Forrester as a registered nurse, and assigned her to work in the OB unit.

17.     Forrester worked a three month period of orientation, i.e. training, and upon successful completion of the orientation period, she became a full-time employee.

18.     For the next several years, Forrester worked in exemplary manner with a clean personnel record.

19.     Indeed, in Fall 2018, Forrester enrolled with and started studying at Downstate Medical Center to study for a Nurse Practitioner's degree.

20.     Throughout her studies, she continued to perform the functions of her job at Maimonides.

21.     In June 2020, Forrester completed her studies at Downstate and graduated with a Masters Degree in Family Nurse Practitioner.

22.     Though Forrester held this higher degree, she continued to work as a registered nurse at Maimonides and she continued to perform her job well.

23.     On August 3, 2020, Maimonides, via Assistant Nurse Manager ("ANM") J. Kuffner, issued to a Forrester a verbal warning concerning "practice concerns."

24.     Though termed a "verbal" warning which is in practice delivered verbally, the warning nonetheless constitutes discipline which must be accompanied with a written notice documenting the warning.

25.     Moreover, the written notice was required to have been signed by Forrester, and delivered to NYSNA and Forrester.

26.     Maimonides did not follow any of the foregoing procedures or protocols.

27.     On October 1, 2020, Maimonides, again via ANM Kuffner, issued a "written" warning to Forrester concerning "practice concerns."

28.     Astonishingly, though the October 1 discipline concerned "written" discipline, Maimonides nonetheless wholly failed to promptly document the discipline, it did not have Forrester sign a disciplinary notice, and it did not distribute a notice to NYSNA and Forrester.

29.     On October 25, 2020, Maimonides convened a meeting with Kuffner, NYSNA representatives, and Forrester, to discuss alleged documentation and practice issues.

30.     At the meeting the NYSNA representatives noted that Maimonides had not documented prior verbal warnings as required and adjourned the meeting so that Maimonides could provide proof of such documentation.

31.     No such documentation, however, existed at that time as Maimonides had failed to follow the procedures, as outlined above.

32.     On or about November 13, 2020, Maimonides again issued a verbal warning to Forrester and it once again failed to follow the procedures concerning documentation.

33.     On or about December 24, 2020, Maimonides suspended Forrester pending investigation, and simultaneously issued a final written warning.

34.     Maimonides did so via video conference and once more failed to follow any of the documentation procedures required to be completed under such circumstances.

35.     On February 18, 2021, for the very first time, Maimonides issued to Forrester a total five disciplinary notices: four verbal warnings, one written warning, and one technical suspension/final written warning.

36.     The four verbal warnings were based on allegations arising on August 1, 2020, August 2, 2020, August 3, 2020, and November 13, 2020.

37.     Each verbal warning noted that "failure to improve will result in progressive discipline."

38.    The written warning was based on allegations arising on October 1, 2020.

39.    The technical suspension/final written warning was based on allegations arising on December 24, 2020.

40.    Forrester's signature is not present on any notice.

41.    To reiterate, though the CBA and hospital procedures require that each of the foregoing disciplines be issued in writing (notwithstanding nomenclature that may reference verbal warnings), that Maimonides have Forrester sign the notices, that Maimonides complete the disciplinary notice "as soon as possible after the incident," and that Maimonides have Forrester sign the notice, each of every one of these requirements was not followed in Forrester's case.

42.    Instead, Maimonides issued multiple forms of discipline all at once.

43.    Based on Maimonides blatant violations of the CBA, on February 22, 2021, NYSNA filed a grievance on behalf of Forrester to challenge the improper disciplines.

44.    Seemingly understanding that they did not follow procedures, Maimonides returned Forrester to work later in February 2021, however, just weeks later, on March 16, 2021, Maimonides terminated Forrester.

45.    Accordingly, on April 7, 2021, NYSNA filed an amended grievance, which included the original grievance, and further grieved the termination.

46.     Forrester remained intricately involved in her defense, continuing to express her desire to defend herself against Maimonides allegations and to prosecute her grievance.

47.     For example, NYSNA proposed dates for an initial grievance meeting with management including April 29, May 3, and May 4, 2021.

48.     Forrester confirmed that May 3 would work for her, and she further inquired about the process, including via various e-mail correspondences between her and NYSNA over the next several days.

49.     May 3 was ultimately not scheduled, and Forrester and NYSNA representative Magda Guillaume continued emailing back and forth for several days to discuss scheduling the grievance hearing, and meeting to prepare her case.

50.     On April 20, 2021, Guillaume emailed Forrester asking if she would be available on May 5, 2021 at 2:00 for the grievance hearing.

51.     Forrester did not immediately see Guillaume's email.

52.     On April 23, 2021, seeing the email for the first time, Forrester further inquired when the preparation meeting would be held.

53.     Guillaume did not respond, so Forrester sent a follow up email on April 27, 2021, noting, "Please confirm you received my last email, I haven't received a response from you."

54.     Forrester escalated her inquiries to NYSNA representative Glen Bouldin.

55.     On April 28, 2021, Guillaume finally responded to Forrester noting that the grievance hearing was scheduled for May 18, 2021 at 11:00a.m. and that they would meet at 10:30 that morning to prepare.

56.     Forrester responded that she was not available on May 18 and noted that she is available on only Mondays and Wednesdays.

57.     Forrester further pointed out that Maimonides had had months to prepare for the hearing, but was concerned that with NYSNA's proposed schedule, she would not have the same opportunity to adequately prepare.

58.     On April 30, 2021, Guillaume emailed Forrester that NYSNA would request new dates and asked if any dates in June would be unavailable for her.

59.     Forrester reiterated her concern about the timing of a pre-hearing meeting and the hearing, and questioned whether NYSNA's proposed timing would be adequate for her preparation.

60.     Forrester further reminded Guillaume that due to Forrester's work commitments, she was available only on Mondays and Wednesdays.

61.     By May 5, 2021, Guillaume had not responded to Forrester's April 30 email, so she followed up, "I still haven't received a reply regarding my last email."

62.     Guillaume responded, "We are working on dates."

63.     Nearly three weeks later, Guillaume had still not offered new dates, so Forrester again followed up, asking "Just following up on the proposed dates, did we find? [sic] I would like to know the status please."

64.     Guillaume responded that, "We are working on dates and will get back to you soon."

65.     On June 1, 2021, Forrester followed up, yet again, asking about hearing dates and why the scheduling was taking so long.

66.     Receiving no response from Guillaume, Forrester followed up with Bouldin, who responded that he was "working on it."

67.     On June 30, 2021, Guillaume finally asked Forrester if she could attend the grievance hearing on July 12.

68.     Forrester responded that she was previously engaged that day for an important and historic moment for her business, but Guillaume did not respond.

69.     On July 21, 2021, Forrester sent an email to Guillaume noting that her business obligation had passed and wanted to hear other proposed dates for the hearing, but Guillaume did not respond.

70.     On August 11, 2021, Forrester re-sent her July 21, 2021 email to Guillaume, and again,

received no response.

71.     On September 24, 2021, having received no further communications from NYSNA,

Forrester text messaged Bouldin:

> Hi glen, this is Kareen forrester, I [sic] calling to inform you that I have
> yet to get a hearing. Should my attorney reach out in order to get this
> scheduled? Please be aware that I will not let this situation fall through
> the cracks so let whoever know this is something I will ensure gets
> resolved one way or the other. Look forward to hearing from you soon.

72.     Forrester did not receive a response until October 25, 2021 when Bouldin emailed her,

"I'm trying to get a handle on all outstanding grievances. Can you please let me know if you want to go

forward in the process."

73.     Forrester responded the same day confirming her desire to continue the grievance, and

provided her availability for the hearing.

74.     Bouldin said that Guillaume would "get back" to her.

75.     Through the end of 2021 and beginning of 2022, Forrester awaited Guillaume's

notification of a hearing date and periodically checked in with Bouldin and NYSNA representative

"Jeff."

76.     No NYSNA representative could or would provide Forrester with a date.

77.     Finally, on March 28, 2022, NYSNA representative Krenare Limanoski emailed

Forrester, "This email is to confirm the grievance hearing for Kareen Forrester on Thursday, 3/31 at

1pm."

78.    In other words, after months and months of pursuing a date for the hearing, NYSNA ultimately scheduled it with just three days notice to Forrester.

79.    Forrester was mourning a death in her family and did not immediately see the email and thus, she did not and could not have attended the March 31st date.

80.    Unbeknownst to Forrester, the hearing was in fact held on March 31.

81.    Also, unbeknownst to Forrester, on April 1, 2022, the hearing officer issued a decision dismissing the grievance based on Forrester's apparent non-appearance.

82.    The hearing officer alleged that, at the hearing, "we verified . . . that the grievant confirmed the grievance hearing date and time on March 16th."

83.    To the extent NYSNA made such representations to the hearing officer, such representation was false as Forrester did not confirm her availability and attendance.

84.    In fact, Forrester first saw the scheduling email on April 2, 2022, after the scheduled hearing date.

85.    Moreover, NYSNA scheduled the hearing for a Thursday, a day of the week on which Forrester had, on multiple occasions, told NYSNA she could not attend a hearing because of patient obligations at her private practice.

86.     That day, Forrester responded to NYSNA:

> Hello everyone, sorry for the delayed response, I had a death in the family. I am not sure why a meeting was scheduled without a briefing prior to the meeting?! Secondly, as previously stated, I have my own private practice and I see pts Tuesday, Thursdays and Fridays. Therefore this best days for a meeting are Mondays and Wednesdays. I look forward to hearing from you soon.

87.     Forrester received no response, so she followed up with another email on April 4, 2022 indicating she was waiting to hear further from NYSNA concerning her April 2nd email.

88.     Forrester received no responses through the summer of 2022, so she again followed up August 23, 2022, "I am still waiting on my grievance to be rescheduled."

89.     Again, on September 7, Forrester asked NYSNA how she should proceed about scheduling the grievance.

90.     On September 28, 2022, Guillaume finally responded, "We are looking into your grievance and will get back to you next week."

91.     Neither Guillaume nor else from NYSNA followed up with Forrester as promised, so on January 14, 2023, Forrester tried contacting Bouldin:

> Hi glen this is Kareen Forrester.. I haven't received a response since my last text to you in regards to my grievance. Is there someone else at NYSA that I should reach out to? Since you are unable to get this matter resolved?! I have documented all correspondence with you and your reps at [Maimonides] and it has been non communicative and very disrespectful to say the least therefore If someone else can get this situation executed I would rather follow up with them… please advise by January 19, 2023.

92.     Bouldin responded, "let's touch base next week. Thank you for your patience."

93.     On January 18, 2023, Bouldin confirmed with Forrester that, "I haven't forgotten about you, I'm pulling together all the information. Speak with you soon."

94.     On January 20, 2023, Forrester again emailed Bouldin, "Can you provide a specific date? Today is the 20th I needed the contact of someone who could expedite this meeting by the 19th and I still didn't receive that information"

95.     Forrester did not receive a response, so on January 23, 2023, she text messaged Bouldin "Clearly this situation is joke to you and all your colleagues… so please forward me your immediate supervisors contact information no later than 12pm, Monday January 23, 2023."

96.     Bouldin called Forrester and told her, for the first time, that the grievance was dismissed and that he would try to get another date.

97.     After speaking with Bouldin, Forrester also text messaged Bouldin:

Where is the documentation stating that I confirmed to be at that meeting, also please note that I stated on multiple emails that I was only available on Monday and Wednesday for hearings? This is all documented via email, were my confirmation for this hearing in writing?

You guys are really funny…. Firing a nurse after she risked her life during Covid was not enough now you guys are trying to get over on trying to get over on technicalities… I see this not gonna end well but I'm definitely up for the fight. I need your supervisors information, clearly this needs to be escalated, I am not wasting another year on this B.S

I need you [sic] supervisor's contact information no later than tomorrow January 25th, 2023 at 12pm. Along with your supervisor information. Please attach documentation of management notifying me of the

> dismissal, was it via email? Certified mail? Because I have [not] seen that
> letter until today. my attorney and I would like copies of those, because
> clearly I was never notified. However please attach whatever supporting
> documents you may have regarding my acknowledgment of the dismissal
> of my grievance, no later than 12 pm Wednesday January 25th 2023. Oh
> and also I was never briefed on the hearing by the third party as per
> protocol so I also need in writing why that did happen.

98.    On January 24, 2023, Bouldin alleged that "management" told Forrester about the

dismissal.

99.    He further said that NYSNA believes the grievance should be decided on the facts and

that he would try to reschedule the hearing.

100.    Forrester continued escalating the issue with NYSNA supervisors.

101.    NYSNA supervisor Bryan Perreira ultimately conceded that communications with

Forrester had "broke down" and that they were trying to understand how that happened.

102.    Forrester continued following up with Perreira over the next few days.

103.    Ultimately, on February 2, 2023, Perreira confirmed that,

> Despite NYSNA's efforts, Maimonides will not agree to re-open the
> grievance matter the Union filed on your behalf in February of 2021, and
> which the Employer dismissed by its letter of April 1, 2022.

> Because the Employer formally dismissed the grievance so long ago and
> has not agreed to re-open it, the Union does not have the ability to pursue
> this matter any further under the terms of our collective bargaining
> agreement with Maimonides.  For these reasons, NYSNA has finally
> closed this matter, and will not pursue it any further.

## FIRST CAUSE OF ACTION
### (Beach of Contract)

104.    Maimonides breached the Collective Bargaining Agreement which governed Forrester's employment with Maimonides.

105.    The breach caused Forrester's termination from employment with Maimonides.

106.    As a result of the breach, Forrester has suffered and continued to suffer loss of past and future earning and retirement and other benefits.

## SECOND CAUSE OF ACTION
### (Breach of Duty of Fair Representation)

107.    NYSNA acted in an arbitrary, capricious, and discriminatory manner, and in bad faith, without regard to the duty of fair representation owed to Forrester concerning the discipline imposed by Maimonides, and Maimonides's ultimate termination of Forrester's employment.

108.    As a result of the breach, Forrester has suffered and continued to suffer loss of past and future earning and retirement and other benefits.

**WHEREFORE,** Plaintiff demands judgment against Defendants, where applicable, for all compensatory, emotional, physical, and punitive damages (where applicable), lost pay, front pay, overtime pay, loss of benefits, reinstatement, injunctive relief, liquidated damages (where applicable), statutory damages, and any other damages permitted by law.  It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled.  Plaintiff demands a trial by jury.

Dated: Melville, New York
       March 30, 2023

                              FAMIGHETTI & WEINICK, PLLC
                              *Attorneys for Plaintiff*
                              25 Melville Park Road, Suite 235
                              Melville, N.Y. 11747
                               (631) 352-0050

                       By:    __/s/_Matthew Weinick_____
                              MATTHEW WEINICK